IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNNSYLVANIA

| | | |
|---|---|---|
| Aliksandr Poludzen | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 23-00505-HB |
| vs. | : | |
| | : | |
| Bucks County, et al. | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |

### DEFENDANTS' BUCKS COUNTY, DAVID KRATZ AND JAMES COYNE BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Bucks County (County), David Kratz (Kratz) and James Coyne (Coyne) and collectively "Answering Defendants," by and through their undersigned counsel, hereby submit this brief in support of their Motion to Dismiss Plaintiff's Complaint.

## I. INTRODUCTION

The gravamen of Plaintiff's Complaint is that he allegedly fell while standing on a chair trying to reach something on top of a locker in a jail cell and was then denied or delayed medical care.

Plaintiff claims he received or was provided delayed and inadequate medical care to treat his alleged injury in violation of his Eighth and Fourteenth Amendment rights. However, Plaintiff's claims must fail because he received appropriate and adequate medical care. First and foremost Answering Defendants are not medical professionals but have contracted with Defendant PrimeCare to provide same. Secondly, Plaintiff was seen the same day by PrimeCare Medical as the suffering of the alleged injury. Despite being seen for the alleged injuries, Plaintiff's factual

allegations contradict one another wherein he states: "Plaintiff's complaints and requests for medical care were denied. Eventually John Doe medical staff defendants saw Plaintiff, but his care was denied or delayed. John Doe Medical Staff Defendants confirmed that Plaintiff had a fracture in his heel. However John Doe Medical Staff Defendants did not provide any care to plaintiff. On or about March 7, 2022 approximately six weeks after the incident Plaintiff was removed from the facility and sent to Abington Hospital." (ECF 1 at ¶ 17-20).

To confirm a fracture, Plaintiff would have to have been seen by medical staff. He was ultimately sent to a hospital where he received additional medical treatment. (ECF 1 at ¶¶ -21-22). Plaintiff, in good faith, cannot claim he was <u>denied</u> medical care.

Accordingly, Plaintiff's claims against the Answering Defendants must fail due to insufficient facts pled to state a claim under Section 1983 and the Eighth and/or Fourteenth Amendments. Further, Plaintiff's claims against Kratz and Coyne should be dismissed as they are entitled to qualified immunity as they did not violate "clearly established" law.

As such, and for the reasons more fully discussed herein, Plaintiff's claims against the Answering Defendants should be dismissed.

**II. STATEMENT OF FACTS & PROCEDURAL HISTORY**

According to Plaintiff's Complaint, on February 4, 2021, Plaintiff, while an inmate within the "Bucks County Prison System" fell from furniture in his cell. (ECF 1 at ¶¶ 13-14). After his alleged fall, Plaintiff "immediately complained and asked for medical attention" however, Plaintiff's complaints and requests were "denied." (*Id.* at ¶ 16-17).

Plaintiff's Complaint is completely bereft of any pertinent information regarding any of these alleged "complaints" and "requests", including any information whatsoever regarding dates, times, specific issues complained about or the identities of the persons to whom such "complaints

and requests" were directed. Then, on or about March 7, 2022 (approximately 32 days after the fall), Plaintiff was sent to Abington Hospital. (ECF 1 at ¶ 21). Plaintiff underwent surgery to repair a broken heel. (ECF 1 at ¶¶ 22).

Plaintiff alleges that the delay and denial of care caused Plaintiff's broken bone to begin to heal. (ECF 1 at ¶ 24). As a result of the delay and denial of care at the Bucks County prison, a far more invasive procedure was performed at Abington Hospital. (ECF 1 at ¶ 24). However, the Complaint is void as to what, if any, facts of how any of the Bucks County Defendants denied medical care. Simply saying Plaintiff complained and asked for medical attention is insufficient. Plaintiff's Complaint lacks any reference or allegation that Plaintiff complained directly to an employee of Bucks County.

Yet despite this lack of specificity, on February 8, 2023, Plaintiff filed a complaint against the Answering Defendants as well as PrimeCare Medical, Inc., John Doe Medical Providers and John Doe Corrections Officers. The Complaint alleges, among other things, that the Answering Defendants failed, with deliberate indifference, to provide Plaintiff with the necessary medical care despite his requests for the same, and that the Answering Defendants' actions were "a direct and proximate cause" of Plaintiff's injuries in violation of his Eighth Amendment constitutional rights. (ECF 1 at ¶¶ 37-49). Further, Plaintiff alleges supervisory liability against County Defendants which includes Bucks County, David Kratz and James Coyne in violation of the Fourteenth Amendment. (ECF 1 at ¶¶ 50-63) Lastly, the Complaint alleges that Bucks County violated Plaintiff's Fourteenth Amendment rights (Monell) by engaging in a policy or custom that was deliberately indifferent to Plaintiff's alleged medical needs. (ECF 1 at ¶¶ 64-79).

### III. LEGAL ARGUMENT

A. Legal Standard on a Motion to Dismiss

To survive a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (affirming grant of Motion to Dismiss Section 1983 claims against township and police officers pursuant to Federal Rule of Civil Procedure 12(b)(6) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *Id.* (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although this pleading standard does not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*,129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than "labels and conclusions[s] . . . a formulaic recitation of the elements of a cause of action . . . [or] ... naked assertion[s] devoid of further factual enhancement" does not meet this standard and should be dismissed. *Id.* (citing *Twombly*, 550 U.S. at 557). "The court need not assume that the plaintiff can prove facts alleged in the complaint, nor credit 'bald assertions' or 'legal conclusions.'" *Redmond v. Southeastern Pa. Transp. Auth.*, No. 09-5076, 2010 U.S. Dist. LEXIS 28436, at *5 (E.D. Pa. Mar. 23, 2010).

Based on the foregoing, Plaintiff's claims lack the facial plausibility required by *Santiago* and *Iqbal.* At its core, this is at best a fall due to Plaintiff's own negligence dressed up as a Section 1983 constitutional rights violation when such cases are always dismissed based on the cases discussed more fully below. Moreover, there is nothing in Plaintiff's Complaint to suggest that he did not receive adequate medical care, and certainly the care he received was not deliberately indifference to his medical needs, other than "naked assertion[s] devoid of further factual

enhancement" in violation of *Twombly*. As such, there is no basis for a constitutional violation and Plaintiff's claims against the Answering Defendants should be dismissed.

B. Plaintiff's Complaint Fails to Demonstrate a Constitutional Violation Within the Meaning of Section of 1983 and Therefore Must Be Dismissed

1. **PLAINTIFF RECEIVED ADEQUATE MEDICAL CARE AND THERE IS NO CONSTITUTIONAL VIOLATION AND COUNT I SHOULD BE DISMISSED**

Plaintiff alleges a "denial of medical care" claim brought under 42 U.S.C. § 1983 pursuant to the Eighth Amendment to the United States Constitution. Title 42 U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects or causes to be subjected, any citizen of the United States or other person…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

Section 1983 is not itself a source of substantive rights, but rather is a vehicle that plaintiffs may use in order to seek redress against state actors for alleged violations of rights under the Constitution or other federal law, including under the Eighth Amendment to the United States Constitution. *Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985); *Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." With respect to prisoner confinement, the Eighth Amendment obligates the government "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *see also Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Reynolds v. Wagner*, 128 F.3d 166, 172-73 (3d Cir. 1997). "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do

so, those needs will not be met. In the worst cases, such a failure may actually produce physical torture or a lingering death." *Estelle*, 429 U.S. at 103 (quoting *In re Kemmler*, 136 U.S. 436, 447 (1890)).

The Supreme Court set forth the standard necessary to establish a claim for a violation of the Eighth Amendment proscription of cruel and unusual punishment in the context of medical care in *Estelle, supra*. To sustain such a claim, a plaintiff must make: (1) a subjective showing of deliberate indifference on the part of the prison officials; and (2) an objective showing that the prisoner's medical needs were serious. *Estelle, supra*; *Pearson v. Prison Health Serv.*, 850 F.3d 526 (3d Cir. 2017); *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

An inmate's medical need is serious under the foregoing standard when it "has been diagnosed by a physician as requiring treatment or . . . is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates*, 834 F.2d at 347 (citations and internal quotations omitted). A medical need is considered serious when denial or delay results in "unnecessary and wanton infliction of pain" or "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss." *Id.* Deliberate indifference encompasses more than inadvertence or a good faith error; it is characterized by "obduracy and wantonness." *Whitley v. Albers*, 475 U.S. 312 (1986). With the foregoing principles in mind, in order for a claim of deliberate indifference against a prison official to survive, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005). This Court has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays

necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). The Third Circuit has also held that "[n]eedless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, . . . violates the Eighth Amendment." *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003).

Negligent misdiagnosis or an inadvertent failure to provide care does not establish a Constitutional violation. *Estelle*, 429 U.S. at 97. "The courts will not intervene upon allegation of mere negligence, mistake or difference of opinion . . . [f]or a Constitutional tort to arise and for a cause of action to be stated under Section 1983, the complainant must allege deliberate indifference to his continued health and well-being." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) (emphasis added). Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims sounding in state tort law. *Bednar v. Cty. of Schuylkill*, 29 F.Supp.2d 250, 253 (E.D. Pa. 1998), quoting, *United States ex rel. Walker v. Fayette County*, 599 F.2d 573, 575 fn. 2 (3d Cir. 1979). In other words, a disagreement between a medical provider and an inmate as to the medical diagnosis and treatment does not constitute deliberate indifference. *Pearson*, 850 F.3d at 535; *Bednar*, *supra*. A mere delay in treatment, without more, does not constitute deliberate indifference. *Byrd v. Shannon*, 2010 U.S. Dist. LEXIS 141662, 17-19 (M.D. Pa. Nov. 23, 2010), *affirmed on reconsideration by Byrd v. Shannon*, 715 F.3d 117 (3d Cir. 2013). Moreover, there must be proof that the conduct alleged was deliberate and intentional. *Hampton v. Holmesburg*, 546 F.2d 1077, 1081 (3d Cir. 1976).

Here, Plaintiff claims as a direct and proximate result of the Defendants' deliberate indifference, plaintiff suffered immense physical pain, humiliation, fear, and physical injuries.

(ECF No. 1 at ¶ 62). Specifically, he claims that Defendants Kratz and Coyne in Count II that specific policies and customs posed a grave danger to patients detained in the Correctional Facility, including the Plaintiff. Further Defendants Katz (sic) and Coyle (sic) maintained a policy of inadequate staffing to meet the medical needs of the inmates at the facility. (52). Plaintiff fell from furniture in his cell and fractured his heel. He acknowledges medical treatment by alleging that "John Doe Medical Staff Defendants saw Plaintiff, but his care was denied or delayed." (ECF No. 1 at ¶ 18). Either care was denied or delayed. Plaintiff's argument is contradictory. Further, John Doe Medical Defendants confirmed that Plaintiff had a fracture in his heel. (ECF No. 1 at ¶ 19). This alone shows that Plaintiff was seen by medical personnel. Lastly, he was taken out of the facility to a hospital for continued medical treatment. (ECF No. 1 at ¶ 21-23). For Plaintiff to claim he was denied medical care is false.

Plaintiff, by his own negligence fell off furniture in his jail cell and is now attempting to turn his conduct in an alleged constitutional violation around the Answering Defendants' alleged failure to provide adequate medical care with deliberate indifference to his medical needs.

Plaintiff actually did receive and was provided with adequate medical care in the instant matter. Medical Defendants provided at least some level of medical care that was responsive to Plaintiff's needs. Thus, the only way for Plaintiff to dress his claims beyond a mere negligence claim contrary to decades of Supreme Court jurisprudence is to somehow claim that the care provided by the Answering Defendants was inadequate in such a way as to be "deliberately indifferent" to his serious medical needs. However, decades of Supreme Court and Third Circuit case law make clear that Courts are unwilling and unable to intervene on the treatment decisions made by medical professionals. *See Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d. Cir. 1979) (stating that there is no question that Courts will "disavow any attempt to second

guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment.") (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). As stated above, the County of Bucks has a contract with PrimeCare to provide medical treatment to inmates incarcerated in the Bucks County Correctional Facility. (ECF 1 at ¶ 11).

Thus, the only thing left for Plaintiff to challenge is the timing of the care provided by the Answering Defendants (even though they are not medical providers) for which he provides no applicable standard of care or other guidelines which would have prevented or mitigated Plaintiff's injuries.

Plaintiff admits that medical staff saw Plaintiff after his fall. Further, they confirmed a fracture. (ECF No. 1 at ¶ 19). Plaintiff, conveniently, leaves out how the medical staff was able to confirm a fracture. Additionally, Plaintiff was taken to Abington Hospital. (ECF No. 1 at ¶ 21). Plaintiff fails to allege what medical care that takes place from the time of this diagnosis and his transport to the hospital. It is abundantly clear that Plaintiff received medical attention regarding his heel. The real gravamen of Plaintiff's case is that because of the alleged delay of care at the Bucks County prison, a far more invasive procedure was performed at Abington Hospital. (ECF 1 at ¶ 23). "As a result of the delay in care, the surgeon was forced to rebreak Plaintiff's heel, so he could adequately perform surgery to repair the bone." (ECF 1 at ¶ 25). At most, and believing Plaintiff's claims as true, he is able to demonstrate negligence in failing to more timely diagnose or provide treatment for his condition. However, a mere delay in treatment or even a misdiagnosis does not equate to "deliberate indifference." Thus, Plaintiff cannot demonstrate a violation of his constitutional rights against Answering Defendants.

Further, Answering Defendants are not medical professionals and, as such, do not provide medical care which is contracted to Defendant PrimeCare. Therefore, Plaintiff cannot establish or

truthfully plead that Answering Defendants (1) knew of Plaintiff's alleged need for medical treatment but intentionally refuses to provide it; (2) delayed necessary medical treatment based on a non-medical reason; or (3) prevented Plaintiff from receiving needed or recommended medical treatment.  See, *Plantier,* supra.

Additionally, it is well established that vicarious liability is not recognized under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978). As more fully set forth below, municipal liability "cannot be based on the *respondeat superior* doctrine but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007). "Municipal liability only attaches when the 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Id.* (quoting *Monell*, 436 U.S. at 694). Not all action rises to the level of a custom or policy. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). A policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict. *Id.* A custom is an act, while not approved by a decision maker, is so widespread as to have the force of law. *Id.*

It must also be shown that "there is a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)) (emphasis added). It must be the policymaker's actions that "directly caused constitutional harm." *Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 175 (3d Cir. 2001). A plaintiff "must show that 'a reasonable municipal policymaker had knowledge of a pattern of prior incidents or knowledge of similar violations of constitutional rights and failed to take adequate measures to ensure the particular

right in question.'" *Cacciatore v. City of Phila.*, 2005 WL 2139876 at *2 (E.D. Pa. 2005) (Bartle, J.) (quoting *Garcia v. County of Bucks*, 155 F. Supp. 2d 259,268 (E.D. Pa. 2001)) (emphasis added). "'[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell*. . ."' *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (quoting *Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985)).

Similarly, in order to show a plausible supervisory liability claim, a plaintiff must: (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001) (internal citations omitted). "[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did . . . the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a relationship between the identified deficiency and the ultimate injury." *Id.*

In the present matter, it is clear that PrimeCare had policies and procedures in place to insure that inmates received medical care. Plaintiff received care for his alleged medical condition. (ECF 1 at ¶ 18,19,21,23). There are no facts articulated by Plaintiff which reveal any policy or procedure by the Answering Defendants which prevented or inhibited PrimeCare's ability to render medical care consistent with the judgment of PrimeCare's personnel. Simply stated, there is no policy or procedure of the Answering Defendants which caused any constitutional violation.

Finally, *Monell* liability cannot lie where there is no underlying constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Stephens v. City of Englewood*, 689 Fed. Appx. 710, 713 (3d Cir. 2017) (affirming district court's dismissal of *Monell* claims against police department and city where Plaintiffs failed to establish an underlying constitutional violation against the individual defendant-detectives); *Johnson v. City of Phila.*, 837 F.3d 343, 354 (3d Cir. 2016) (citing *Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003) (holding that a *Monell* claim is not cognizable absent an underlying constitutional violation).

Therefore, it is respectfully requested that Count I of Plaintiff's Complaint be dismissed against Answering Defendants.

2. **PLAINTIFF'S §1983 CLAIM IN COUNT II AGAINST ANSWERING DEFENDANTS FAILS DUE TO NO PERSONAL INVOLVEMENT.**

The County Defendants should be dismissed from this case due to lack of personal involvement. Count II of the Complaint asserts a § 1983 claim against Defendants Bucks County, Katz (sic) and Coyle (sic) for "supervisory liability." (ECF 1 pg. 7).  To establish personal liability against a defendant in a section 1983 action, that defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n. 3 (1981)).

In the context of a defendant who is alleged to have performed in a supervisory role, Courts have identified two general instances in which either the conduct of that supervisor-defendant or the policies/procedures of that supervisor-defendant may amount to personal involvement and thereby warrant a finding of individual, supervisory liability for a constitutional tort: First,

supervisory liability may attach if the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.,* 372 F.3d 572, 586 (3d Cir. 2004) (citing *Baker v. Monroe Twp.,* 50 F.3d 1186, 1190-91 (3d Cir. 1995)). Second, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Id. (quoting *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 725 (3d Cir. 1989)). In this second instance, a plaintiff must prove the following four elements to establish supervisory liability: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-supervisor was aware that the policy created an unreasonable risk; (3) the defendant-supervisor was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989); *Brown v. Muhlenberg Twp.,* 269 F.3d 205 (3d Cir. 2001).

Plaintiff's Complaint fails to allege sufficient, specific facts showing personal involvement by any of the County Defendants. Plaintiff alleges, without any basis, that Defendants Kratz and Coyne (incorrectly identified as Katz and Coyle) did not appropriately refer the Plaintiff to a proper specialist to treat his complaints and request for medical care promptly, and the delay caused permanent injury. ((ECF No. 1 at ¶ 54). This is wholly insufficient to establish personal involvement. There are no factual allegations that these individual Defendants personally participated with others in violating Plaintiff's rights or directed others to violate them. Furthermore, there is insufficient factual allegations to demonstrate these Defendants had knowledge of and acquiesced in any subordinate's unconstitutional conduct vis-à-vis Plaintiff.

There are no allegations that any of the Answering Defendants had knowledge of Plaintiff's alleged medical condition.  Plaintiff, at no point in his Complaint, alleges that he complained to a **Bucks County** employee or official let alone identify one.   As non-medical professionals, Answering Defendants would not "refer" Plaintiff to a "proper specialist."

Further, Plaintiff alleges "[U]pon information and belief, defendants (unspecified) knew that specific policies and customs posed a grave danger to patients detained in the Correctional Facility, including the Plaintiff. Defendants Katz (sic) and Coyle (sic) maintained a policy of inadequate staffing to meet the medical needs of the inmates at the facility. (ECF No. 1 at ¶ 52-53).

The Complaint does not set forth a factual basis from which to conclude that Answering Defendants personally established and maintained any policy or procedure which, in turn, directly caused constitutional harm to Plaintiff. There are no factual allegations, other than boilerplate accusations, demonstrating that Answering Defendants were aware of any policy or procedure creating any unreasonable risk, that they were subjectively indifferent to any risk, or that some policy failure caused Plaintiff's harm. Plaintiff fails to identify a specific policy and has, quite simply, failed to state a claim against Answering Defendants.

Therefore, the Complaint should be dismissed against Answering Defendants as there was no personal involvement and Plaintiff is basing liability on a theory of *respondeat superior* which is improper.

3. **DEFENDANTS KRATZ AND COYNE  ARE ENTITLED TO QUALIFIED IMMUNITY**

"Government officials performing discretionary function(s) generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether defendants are entitled to claim qualified immunity, Courts engage in a three-part inquiry: (1) whether the plaintiff alleged a violation of plaintiff's constitutional rights; (2) whether the right alleged to have been violated was clearly established in the existing law at the time of the violation; and (3) whether a reasonable official knew or should have known that the alleged action violated the plaintiff's rights. *Rouse v. Plantier*, 182 F.3d 192, 196-97 (3d Cir. 1999). The question of whether a claim is "clearly established" does not refer to general principles of law but instead whether a reasonable official under the same circumstances could not have known that his or her conduct was illegal. *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *see also Malley v. Briggs*, 475 U.s. 335 (1986). If there is a "legitimate question' as to the lawfulness of the conduct, qualified immunity

applies. *Id.* at 641. Such an inquiry is a question of law for the courts to decide. *Elder v. Holloway*, 510 U.S. 510, 516 (1994).

As stated above, the County of Bucks has a contract with Defendant PrimeCare to provide medical care to incarcerated individuals. Defendants Kratz and Coyne have not been identified as medical professionals or providers. "Eventually John Doe medical staff defendants saw Plaintiff, but his care was denied or delayed. John Doe Medical Staff Defendants confirmed that Plaintiff had a fracture in his heel." (ECF No. 1 at ¶18-19). Plaintiff, contradictory, pleads "[H]owever John Doe Medical Staff Defendants did not provide any care to plaintiff." (ECF No. 1 at ¶ 20. Logic dictates that to "confirm" a fracture Defendant PrimeCare would have to examine, see and treat Plaintiff. Further proof of treatment is pled by Plaintiff: "On or about March 7, 2022 approximately six weeks after the incident Plaintiff was removed from the facility and sent to Abington Hospital." (ECF No. 1 at ¶ 21).

Answering Defendants are entitled to qualified immunity because Plaintiff failed to establish a violation of his constitutional rights, the right alleged to have been violated was clearly not established and whether failure to establish that any of the Answering Defendants knew or should have known that the alleged action violated the plaintiff's rights.

### 4. PLAINTIFF'S COMPLAINT FAILS TO STATE A *MONELL* CLAIM AGAINST BUCKS COUNTY

The Fourteenth Amendment protects citizens, from, among other things, the government's ability to "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of governmental behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). This is because the Supreme Court has "always been reluctant to expand the concept of substantive due process." *Collins v. Harker Heights*, 112 S.Ct. 1061, 1068 (1992).

In the instant matter, Plaintiff is bringing his *Monell* action under the Fourteenth Amendment. (ECF No.1 pg. 8). This is despite the fact that the "deliberate indifference" standard sought to be applied by Plaintiff is typically associated with claims brought under the Eighth Amendment. Thus, under *Albright* and *Estelle*, Plaintiff fails to bring his claim against Bucks County under the appropriate Amendment, as prison conditions claims *require* that that prisoners prove their conditions constituted "cruel and unusual punishment" under the Eighth Amendment. Accordingly, Plaintiff's claims against Bucks County must be dismissed.

In the alternative, to establish § 1983 liability against a "local government, the plaintiff must prove that a municipal 'policy or custom' is the 'moving force' of the constitutional violation at issue." *Rajab v. Westmoreland Cnty.*, 2023 U.S. Dist. LEXIS 10811, at *7 (W.D. Pa. 2023);

*citing Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A county, as a municipality, is liable pursuant to § 1983 only "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (*quoting* 42 U.S.C.§1983). "A municipality, however, cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior.*" *Monell*, *supra*, at 691.

"Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996). However, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). A plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Additionally, a "plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). A plaintiff "may do so by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges" or that the municipality "had knowledge of 'similar unlawful conduct in the past, . . . failed to take precautions against future violations, and that [its] failure, at least in part, led to [the] injury.'" *Id.*

Certainly, precedent exists for the pursuit of *Monell* claims for a failure to adopt or establish sufficient policies, just as it exists for defective policies themselves. "Failure to train can be the basis of *Monell* liability when the municipality's 'failure to train reflects deliberate indifference to

constitutional rights.'" *Wood v. Williams*, 568 F. App'x 100, 105 (3d Cir. 2014) (*quoting City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 392 (1989)). However, "[e]stablishing municipal liability on a failure to train claim under § 1983 is difficult. A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries." *Reitz v. Cty. of Bucks,* 125 F.3d 139, 145 (3d Cir. 1997); *citing Colburn v. Upper Darby Township*, 946 F.2d 1017, 1030 (3d Cir. 1991). Moreover, our Courts have specifically acknowledged that where a Plaintiff does not allege evidence of multiple constitutional violations as a result of the absence of policies, only in "a rare and narrow category of circumstances, a 'failure to train' or 'lack of policy' claim may be established on the basis of a single constitutional violation." *Williams v. Velez*, 2017 U.S. Dist. LEXIS 72575, at *10 n.2 (E.D. Pa. 2017) (*quoting Connick v. Thompson*, 563 U.S. 51, 63-64 (2011)). In fact, "[i]n order for a single incident to give rise to a § 1983 cause of action against a municipality, the constitutional injury at issue must be a 'highly predictable consequence' of the municipality's lack of established policy or failure to train its officers to avoid such injurious conduct." *Williams*, *supra*, at *10 n.2; *citing Thomas v. Cumberland Cty.*, 749 F.3d 217, 225 (3d Cir. 2014) (quoting *Connick*, *supra*, at 63-64)).

In short, the Plaintiff's factual allegations against Bucks County pursuant to his "Municipal Liability" theory in Count III are that Bucks County promulgated and maintained policies and customs which were the "moving force that caused Plaintiff's constitutional and statutory rights to be violated." (ECF No. 1 at ¶ 66). Further, Plaintiff alleges Bucks County "did not correctly examine and evaluate prisoners concerning their medical needs." (ECF No. 1 at ¶ 69). "Had Defendants Bucks County and PrimeCare, properly promulgated appropriate protocol, not had an improper custom, or adequately trained and or supervised the individual defendants, the Plaintiff would have received proper care and supervision. (ECF No. 1 at ¶ 75).

Here, Plaintiff fails to state any facts which show that the County was involved in any way with Plaintiff's alleged Constitutional injuries. Instead, Plaintiff's claims are based on the idea that the County allegedly lacked engagement demonstrating deliberate indifference to the plight of prisoners in county prisons. However, even if one accepts that somehow a constitutional violation has occurred here (and to be clear, it did not as discussed at length herein), the idea that the County's lack of action in this particular case was the "moving force" behind Answering Defendants actions is absurd. Plaintiff can point to no official policy of the County which mandates what Plaintiff alleges is an inappropriate level of medical care for its resident prisoners. Pleading one incident, even if true, is not a course of conduct. Plaintiff does not demonstrate a consistent practice of any of the Answering Defendants that is so widespread that it has the force of law as discussed in *Monell*. Instead, the only argument Plaintiff has with respect to a "practice" or "custom" within the meaning of *Monell* is that treatment of Plaintiff himself demonstrates a policy or practice in violation of the Constitution. However, such a claim must fail when considering that Plaintiff did receive treatment, confirmed a fractured heel and was taken to Abington Hospital. Thus, there is no basis for alleging that the Answering Defendants engaged in some sort of unconstitutional practice or custom while Plaintiff was incarcerated. If anything, the Answering Defendants demonstrated that the official policy and custom is to be proactive in responding to prisoner medical claims, even taking someone to the hospital for continued care and treatment.

Nowhere in these pleadings can necessary allegations of an affirmative link between the absence of sufficient policies and Plaintiff's injuries, knowledge by Bucks County of prior medical complaints, or predictability of the alleged lack of policy to cause constitutional injury be identified. Plaintiff has failed to cite to a single policy.  Lastly, establishing liability by way of a failure to train, supervise or discipline claim against a municipality is a substantial burden, one to

which the Plaintiff has not met even the most liberal standards of pleading. Therefore, dismissal of Count III is necessary.

## IV. CONCLUSION

For the reasons stated above, it is respectfully requested that Plaintiff's Complaint be Dismissed against the Answering Defendants, Bucks County David Kratz and James Coyne.

Respectfully Submitted,

**BIDLINGMAIER & BIDLINGMAIER**

BY: /s/ *Keith J. Bidlingmaier*
KEITH J. BIDLINGMAIER, ESQUIRE
Attorney for Bucks County
PA Attorney I.D. No. 87776
201 Corporate Drive East
Langhorne, PA 19047
Keith@BidlingmaierLaw.com
*Attorney for Defendant County of Bucks, Director David Kratz and Deputy Director James Coyne*

Dated: April 10, 2023